# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RILEY SIMPSON,<br>NOAH ALAN HENDERSON,<br>JACOB CHAPMAN, and<br>SUZANNE SEED,<br>and all others similarly situated, | §<br>§<br>§<br>§<br>§<br>§ | |
| **Plaintiffs,** | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. _____ |
| ROBINHOOD FINANCIAL LLC,<br>ROBINHOOD SECURITIES, LLC,<br>ROBINHOOD MARKETS, INC.,<br>TD AMERITRADE HOLDING<br>CORPORATION, CHARLES<br>SCHWAB CORPORATION,<br>CITADEL LLC, and<br>MELVIN CAPITAL<br>MANAGEMENT, LP, | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| **Defendants.** | §<br>§ | |

## PLAINTIFFS' ORIGINAL CLASS COMPLAINT

Plaintiffs Riley Simpson ("Simpson"), Noah Alan Henderson ("Henderson"), Jacob Chapman, and Suzanne Seed ("Seed"), and all others similarly situated (collectively, "Plaintiffs") file this Original Class Action Complaint pursuant to Federal Rule of Civil Procedure 23 against Defendants Robinhood Financial LLC, Robinhood Securities, LLC, Robinhood Markets, Inc. (collectively, "Robinhood"), TD Ameritrade Holding Corporation ("Ameritrade"), Charles Schwab Corporation ("Charles Schwab") (collectively, Robinhood, Ameritrade, and Charles Schwab are referred to herein as "Defendants"), Citadel LLC ("Citadel"), and Melvin Capital Management, LP ('Melvin Capital") (Citadel and Melvin Capital are collectively referred to herein as the "Hedge Fund Defendants") and, for cause, would respectfully show unto the Court as follows:

# I.

## PRELIMINARY STATEMENT

1.      Defendants are online brokerage firms and/or financial services companies. The Hedge Fund Defendants are Citadel, a multinational hedge fund and financial services company, and Melvin Capital, an American investment management firm and hedge fund. In the days preceding the filing of this lawsuit, retail investors – many of whom are young investors simply looking to earn some money in the stock market – have been abhorrently taken advantage of and denied the opportunity to participate in a so-called "open market" by Defendants and Hedge Fund Defendants. These retail investors, like Plaintiffs, made investments in certain stocks to the detriment of wealthy, elite hedge funds that had short sold these stocks. The retail investors' purchase of these stocks resulted in a drastic increase in value, which threatened to cause billions of dollars in losses to certain hedge funds like the Hedge Fund Defendants. In an effort to offset these enormous losses, Defendants purposefully, willfully, and knowingly removed certain stocks and/or imposed sudden restrictions on the trading of certain stocks on their trading platforms during unprecedented stock price increases. Upon information and belief, these actions were done at the behest of and in concert with the Hedge Fund Defendants. By doing so, Defendants deprived retail investors, like Plaintiffs, of the ability to invest in the open-market, deprived those investors of purchasing certain stocks while they were making unprecedented gains, and manipulated the open-market to the detriment of retail investors, including Plaintiffs. The reason is simple – hedge funds, like Citadel and Melvin Capital, who had been taking advantage of the market for years, were now facing astronomical losses, having short sold stocks that were now realizing unprecedented gains. The Hedge Fund Defendants, upon information and belief,

conspired with the other Defendants to prohibit the purchase of certain stocks, effectively driving the price down to save themselves at the expense of Defendants' users and customers, to whom they owed fiduciary and contractual duties. By this suit, Plaintiffs, and all those similarly situated, seek to recover the damages caused to them by Defendants' nefarious actions.

## II.

## PARTIES

2.    Plaintiff Riley Simpson was and is a citizen of the State of Texas.

3.    Plaintiff Noah Alan Henderson was and is a citizen of the State of Texas.

4.    Plaintiff Jacob Chapman was and is a citizen of the State of Texas.

5.    Plaintiff Suzanne Seed was and is a citizen of the State of Texas.

6.    Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly owned subsidiary of Robinhood Markets, Inc.  Robinhood Financial LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC. Defendant Robinhood Financial LLC may be served with process by serving its registered agent, Incorporating Services, Ltd. at 3500 S. Dupont Hwy., Dover, Delaware 19901.

7.    Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial LLC acts as a clearing broker and clears trades introduced by its

affiliate Defendant Robinhood Financial. Defendant Robinhood Securities, LLC may be served with process by serving its registered agent, Incorporating Services, Ltd. at 3500 S. Dupont Hwy., Dover, Delaware 19901.

8.     Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC and a registered broker-dealer with the SEC.  Defendant Robinhood Markets, Inc. may be served with process by serving its registered agent, Incorporating Services, Ltd. at 3500 S. Dupont Hwy., Dover, Delaware 19901.

9.     Defendant TD Ameritrade Holding Company is a Delaware Corporation with its principal place of business at 3000 TD Ameritrade Lane, Southlake, Texas 76092 It is a wholly-owned subsidiary of Charles Schwab and is registered as a broker-dealer with the SEC. Defendant TD Ameritrade Holding Company may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St, Suite 900, Dallas, Texas 75201.

10.     Defendant Charles Schwab Corporation is a Delaware corporation with its principal place of business at 211 Main Street, San Francisco, C1lifornia, 94105.  It is the corporate parent of TD Ameritrade Holding Company and is registered as a broker-dealer with the SEC.  Defendant Charles Schwab may be served with process by serving its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

11.     Defendant Citadel LLC is a Delaware limited liability company with its principal place of business at 131 S. Dearborn St., 32nd Floor, Chicago, IL 60603.  It is registered as a broker-dealer with the SEC.  Defendant Citadel may be served with process

by serving its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington Delaware, 19801.

12.    Defendant Melvin Capital Management, LP is a Delaware limited partnership with its principal place of business at 535 Madison Avenue, 22nd Floor, New York, New York, 10022.  It is registered as a broker-dealer with the SEC.  Defendant Melvin Capital may be served with process by serving its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808, or wherever else he may be found.

### III.

### JURISDICTION AND VENUE

13.    Pursuant to 28 U.S.C. § 1332(d)(2), this Court has subject-matter jurisdiction over this action. The aggregate claims of all members of the proposed class and subclasses exceed $5 million, not including interest and costs.  Further, there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendants.

14.    Pursuant to 28 U.S.C. § 1391, venue for this action is proper in this Court because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Defendants distributed, marketed, advertised, and/or sold the trading services that are the subject of this Complaint. Venue is also proper in this District pursuant to 28 USC § 1391(b)(2) because a substantial part of the acts and omissions that gave rise to this Complaint occurred or emanated from this District.

15.    This Court has personal jurisdiction over Defendants because they are authorized to do business and do conduct business in Texas, and Defendants have

specifically marketed, advertised, and made substantial sales in Texas, and have sufficient minimum contacts with this state and/or sufficiently availed themselves of the markets of this State through their promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## IV.

## FACTUAL BACKGROUND

16.     Defendants are online brokerage firms and/or financial services companies. Defendants' customers can place securities trades through the firms' websites, typically by using a web-based application (or "app"). Defendants permit customers to purchase and sell securities, including futures contracts.  Robinhood specifically represented to buyers that it was out for the "little guy" and was going to provide a platform for the retail investor to be able to equalize the playing field.  Hence, the name Robinhood -- "rob from the rich and give to the poor."

17.     Robinhood represented itself out to the public as being "out for the little guy", like its literary and cinematic namesake.  Robinhood markets itself primarily to younger investors and claims over 10 million users of its trading app.  On or about March 23, 2016, Robinhood's official Twitter account proclaimed: "Let the people trade." Robinhood represented itself out to others as being a supporter of the "retail revolution." It has since discarded these mantras and has blocked access for its millions of customers to trade particular securities.

18.     Robinhood offered customers their first stock trade as "free" to entice the customers to sign up with their company.  TD Ameritrade advertised "zero" commissions on online trades to entice customers to sign up with their company.    In the end, Defendants chose to cut out the very customers that they solicited in favor of wealthy

hedge funds.  The actions of the Defendants have drawn the attention of a Congressional inquiry as well as various high-profile analysts and businessmen inquiring as to why Defendants are restricting the buying capabilities of these small retail investors.

19.    On or around January 11, 2021, the share price of several stocks, including but not limited to, GameStop Corp. ("GME"), Bed Bath and Beyond (BBNY), Koss Corporation ("KOSS"), AMC Entertainment Holdings, Inc. ("AMC"), Express, Inc. ("Express"), Nokia Oyj ("NOK"), American Airlines Group. Inc. ("AAL"), BlackBerry, Ltd. ("BB"), Naked Brand Group, Ltd. ("NAKD"), Trivago NV ("TRVG"), Castor Maritime, Inc. ("CTRM"), Sundial Growers, Inc. ("SNDL"), and Tootsie Roll Industries, Inc. ("TR") (collectively referred to herein as the "Restricted Stocks") began to rise dramatically.

20.    At that time, Defendants allowed retail investors to trade these stocks, including unrestricted buying and selling and shorting of the Restricted Stocks, on the open market.

21.    On or about January 27-28, 2021,  in order to slow the growth of the Restricted Stocks and deprive their customers of the ability to use their services, Defendants abruptly, purposefully, willfully, and knowingly pulled the Restricted Stocks from their apps and/or restricted retail investors from buying the Restricted Stocks. This had the effect of preventing retail investors from buying or, in certain cases, from even searching for the Restricted Stocks on the apps.  Upon information and belief, it appears Robinhood was aware that certain hedge funds had "reloaded their shorts before they told Robinhood to stop trading."

22.    Upon information and belief, Defendants' actions were done purposefully and knowingly to manipulate the market for the benefit of people and financial institutions who were not Defendants' customers.

23.     Since restricting the buying of the Restricted Stocks, the price of some if not all the Restricted Stocks has gone up, depriving investors of potential gains.   Moreover, by restricting the buyers from purchasing stocks, in many instances, the stock prices plummeted in favor of the "shorts" so that they could purchase the stock at manipulated reduced prices to the detriment of the "little guys", the retail investors.

24.     Additionally, in the event the price of the Restricted Stocks goes down, Defendants have deprived investors of "shorting" the Restricted Stocks in the hopes the price drops.

25.     In sum, Defendants have completely blocked retail investors from purchasing the Restricted Stocks for no legitimate reason, thereby depriving retailer investors from the benefits of Defendants' services, leaving them in the vulnerable and unenviable position of only being able to sell or hold the stock, which again favors the "shorts."   Upon information and belief, there are instances where one or more of the Defendants sold the stock of their customers without their knowledge or under unfair restrictions or unfair circumstances.   In addition, Defendants' actions unlawfully manipulated the stock prices of the Restricted Stocks to the detriment of any and all owners of the Restricted Stocks.

26.     By failing to respond at all to customers who placed timely trades—and outright blocking customers from trading a security—Defendants have breached their obligations and duties to their customers and caused their customers substantial losses due solely to their own tortious conduct. This includes but is not limited to violating The Financial Industry Regulatory Authority's ("FINRA") Rule 5310, "Best Execution and Interpositioning," which requires that Defendants "must make every effort to execute a marketable customer order that it receives promptly and fully."

27.     Upon information and belief, Defendants are pulling securities like GME and the other Restricted Stocks from their platform in order to slow growth to help benefit wealthy individuals, institutions, and hedge funds who are Defendants' large institutional investors or potential investors.  By taking actions that are, upon information and belief, clearly designed to solely benefit the wealthy elite minority to the detriment of retail investors – the "little guy" and the people, Defendants have caused damage to the retail investors, like Plaintiffs, who now bring this suit.

28.     Plaintiff Simpson purchased Restricted Stocks through the Robinhood app on or before January 27, 2021 and prior to the imposition by Defendants of any restrictions on those stocks.  On the morning on January 28, 2021, Simpson was unable to purchase Restricted Stocks through Robinhood and found many of the Restricted Stocks were unavailable. Restricting retail investors of the ability to buy the Restricted Stocks deprived Simpson of certain earning opportunities and adversely affected the value of the Restricted Stocks he did own causing damages to Simpson, which restrictions favored the hedge fund "shorts" to the detriment of Plaintiffs.

29.     Plaintiff Henderson purchased GME, one of the Restricted Stocks, through the Robinhood app on or about January 25, 2021, and prior to the imposition by Defendants of any restrictions on those stocks.  On the morning on January 28, 2021, Henderson was unable to purchase Restricted Stocks, including GME, through Robinhood and found many of the Restricted Stocks were unavailable. Restricting retail investors of the ability to buy the Restricted Stocks deprived Simpson of certain earning opportunities and adversely affected the value of the Restricted Stocks he did own causing damages to Henderson, which restrictions favored the hedge fund "shorts" to the detriment of Plaintiffs.

30.     Plaintiff Chapman purchased GME, one of the Restricted Stocks, through the Robinhood app on or about January 27, 2021, and prior to the imposition by Defendants of any restrictions on those stocks.  On the morning on January 28, 2021, Chapman was unable to purchase Restricted Stocks, including GME, Nokia, and AMC, through Robinhood and found many of the Restricted Stocks were unavailable. Restricting retail investors of the ability to buy the Restricted Stocks deprived Chapman of certain earning opportunities and adversely affected the value of the Restricted Stocks he did own causing damages to Chapman, which restrictions favored the hedge fund "shorts" to the detriment of Plaintiffs.

31.     Plaintiff Seed purchased several of the Restricted Stocks on or before January 27, 2021 and prior to the imposition by Defendants of any restrictions on those stocks.  On the morning of January 28, 2021, Plaintiff Seed was unable to purchase in specific Restricted Stocks through Ameritrade as Ameritrade had imposed certain restrictions on those stocks.  Further, restricting retail investors of the ability to buy the Restricted Stocks deprived Seed of certain earning opportunities and adversely affected the value of the Restricted Stocks she did own causing damages to Plaintiffs, which restrictions favored the hedge fund "shorts" to the detriment of Plaintiffs.

32.     Thus, Plaintiffs, like so many others, lost out on all earning opportunities.

## CLASS ACITON ALLEGATIONS

33.     Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class, defined as:

> **All customers of Robinhood, Ameritrade, and Charles Schwab within the United States.**

34.    Additionally, or in the alternative, Plaintiffs bring claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Subclass, as defined below:

**All customers of Robinhood, Ameritrade, and Charles Schwab, within the United States who were not able to execute trades on the Restricted Stocks after Defendants knowingly, willfully, and purposefully removed them completely from their platform.**

35.    Excluded from the Class are the Defendants and the Hedge Fund Defendants and their current employees, counsel for either party, as well as the Court and its personnel presiding over this action.

36.    This action has been brought and may properly be maintained as a class action against Defendants pursuant to the provisions of Federal Rule of Civil Procedure 23.

37.    Numerosity:  The precise number of members of the proposed Class is unknown to Plaintiffs at this time, but, based on information and belief, Class members are so numerous that their individual joinder herein is impracticable. Based on information and belief and publicly available reports, Class members number in the hundreds of thousands and up to tens of millions. Subclass members are likely in the hundreds of thousands and up to millions. All Class and Subclass members may be notified of the pendency of this action by reference to Defendants' records, or by other alternative means.

38.    Commonality:  Numerous questions of law or fact are common to the claims of Plaintiffs and members of the proposed Class. These common questions of law and fact exist as to all Class members and predominate over questions affecting only individual

Class members. These common legal and factual questions include, but are not limited to the following:

a.    Whether Defendants knowingly failed to provide the financial services that were needed to handle reasonable consumer demand, including trading securities that are available on every other competitive trading platform;

b.    Whether Defendants failed to provide the duty of care to their customers when they purposefully removed the Restricted Stocks;

c.    Whether Defendants removed the Restricted Stocks purposefully to harm their customers' positions in the Restricted Stocks and benefit their own potential financial gains;

d.    Whether Defendants violated FINRA Rule 5310, among other FINRA rules, state rules, and federal regulations;

e.    Whether Defendants violated consumer protection laws in failing to disclose that its services would not include the ability to trade on Restricted Stocks, and other securities, for substantial periods of time;

f.    Whether Defendants were in breach of its legal, regulatory, and licensing requirements by failing to provide adequate access to financial services;

g.    Whether Defendants were in breach of its contracts and/or the implied covenant of good faith and fair dealing in connection with its failure to provide financial services;

h.    Whether Defendants were negligent or grossly negligent by failing to provide financial services in a timely manner due to its own possible nefarious desires;

i.    Whether Defendants breached their fiduciary duties to customers by failing to provide adequate access to financial services;

j.     Whether Defendants were unjustly enriched by their conduct;

k.     Whether the Hedge Fund Defendants conspired with Defendants with respect to the conduct discussed above.

l.     Whether Plaintiffs and the other Class members were injured by Defendants' and the Hedge Fund Defendants' conduct, and if so, the appropriate class-wide measure of damages, restitution, and other appropriate relief, including injunctive relief.

m.     Whether Plaintiffs and the other Class members are entitled to injunctive and declaratory relief.

39.     Typicality: The claims of the named Plaintiffs are typical of the claims of the proposed Class in that the named Plaintiffs were customers during the class period and were unable to trade Restricted Stocks and place time-sensitive trades on Restricted Stocks and sustained damages as a result of Defendants' wrongful conduct.

40.     Adequate Representation: Plaintiffs will fairly and adequately represent the interests of the Class in that they have no conflicts with any other Class members. Plaintiffs have retained competent counsel experienced in litigating complex civil actions, including those involving financial services, and counsel will vigorously litigate this class action.

41.     Predominance and Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. A class action is superior to other available means, if any, for the fair and efficient adjudication of this controversy. Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants. Additionally, given the relatively modest damages sustained by most

individual Class members, few, if any, proposed Class members could or would sustain the economic burden of pursuing individual remedies for Defendants' wrongful conduct. Treatment as a class action will achieve substantial economies of time, effort, and expense, and provide comprehensive and uniform supervision by a single court. This class action presents no material difficulties in management.

42.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(A) because the prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which may produce incompatible standards of conduct for Defendants.

43.     Class action certification is warranted under Fed. R. Civ P. 23(b)(1)(B) because the prosecution of separate actions by individual members of the proposed Class would create a risk of adjudications with respect to individual Class members which may, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

44.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive, declaratory, or equitable relief appropriate with respect to the Class as a whole.

45.     Class action certification is also warranted under Fed. R. Civ P. 23(b)(3) because questions of law or fact common to the Class members predominate over any questions affecting only individual members, and a Class action is superior to other available remedies for the fair and efficient adjudication of this controversy. The amount of damages available to the individual Plaintiffs is insufficient to make litigation addressing Defendants' conduct economically feasible for most in the absence of the class

action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

46.    Class action certification is also warranted under Fed. R. Civ P. 23(c)(4) because questions of law or fact common to the Class members may be certified and decided by this Court on a class wide basis.

**IV.**

**CAUSES OF ACTION**

**Count One:  Breach of Contract (against Defendants)**

47.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

48.    Plaintiffs and Defendants entered into valid and enforceable agreement, specifically certain Customer Agreements, to use Defendants' trading platforms. Plaintiffs and class members entered into a Customer Agreement with one or more Defendants.  Plaintiffs have standing to sue for breach of these agreements with Defendants.

49.    Plaintiffs performed, tendered performance, or were excused from performing their contractual obligations.

50.    Defendants breached the agreements, by, among other things, (i) failing to disclose that their platforms were going to randomly pull a profitable stock from its platform; (ii) failing to provide adequate explanation to their customers; (iii) putting customers and users at a disadvantage compared to customers who used other trading

apps; (iv) failing to provide access to financial incentives to purchase securities including the Restricted Stocks; (v) prohibiting Plaintiffs from performing in a timely manner (or at all) under their contracts; (vi) failing to comply with all applicable legal, regulatory, and licensing requirements, including but not limited to the above-referenced FINRA rules; and (vii) failing to exercise trades and actions requested by their customers.

51.    Defendants failure to perform and their breaches of Customer Agreements with Plaintiffs resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. As a result of Defendants' breach of these contracts, Defendants have proximately caused actual and consequential damages to Plaintiffs in an amount within the jurisdictional limits of this Court, plus interest, costs, and post-judgment interest as allowed by law.

## Count Two:  Negligence and Gross Negligence (against Defendants)

52.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

53.    Defendants owed legal duties to Plaintiffs. By the conduct discussed above, Defendants have breached their duties to the Plaintiffs. As a result of Defendants' conduct and breach of duties owed to Plaintiffs, Defendants' have proximately caused injury to Plaintiffs, for which Plaintiffs bring this suit.

54.    In addition, the acts of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, or with actual malice. Upon information and belief, as a result of Defendants' conduct, Plaintiffs have suffered actual and consequential damages in an amount that is within the jurisdictional limits of this

Court, for which Plaintiffs now bring this suit. In addition, Plaintiffs seek the recovery of exemplary damages, interest, and costs.

55.     Defendants had a duty to exercise reasonable care in conducting and facilitating transactions for their customers.  Defendants also had a duty to exercise reasonable care in providing trades on the free, open market for their customers. Defendants unlawfully breached their duties by, among other things, (i) removing Restricted Stocks without notice from their trading apps; (ii) failing to provide financial services related to the Restricted Stocks; (iii) failing to notify customers in a timely manner of the blackout related to the Restricted Stocks.  Upon information and belief, no financial institution similar to any Defendant has ever outright banned customers from purchasing a specific share of a specific security.

56.     Defendants abandoned their retail investor customers, a market they specifically targeted, by pulling Restricted Stocks.  This standard of care deviates so much from what is required for a business engaging in time sensitive trading services that it can only be characterized as a complete abandonment of duties.

57.     Defendants' grossly negligent and wrongful breaches of the duties owed to Plaintiffs and members of the Class and Subclass proximately caused losses and damages that would not have occurred but for Defendants' gross breach of its duty of due care. These losses reflect damages to Plaintiffs and members of the Class and Subclass in an amount to be determined at trial or separate proceedings as necessary.

**Count Three:  Breach of Fiduciary Duty (against Defendants)**

58.     Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

59.     Plaintiffs and Defendants had a fiduciary relationship. As a licensed provider of financial services, Defendants were fiduciaries to Plaintiffs and Class members and owed them the highest good faith and integrity in performing financial services on their behalf. Defendants also acted as a fiduciary to every customer who agreed to a Customer Agreement.

As a result of the actions of Defendants as set forth above, Defendants breached their fiduciary duties to Plaintiffs. Defendants' breach resulted in injury to Plaintiffs and a benefit to Defendants. Because the fiduciary duties arise in part from a written contract, the breach of fiduciary duty is also a breach of contract entitling Plaintiffs to an award of attorneys' fees.

60.     Plaintiffs would request that the Court enter a judgment in the amount of the damages for said breaches of fiduciary duties and constructive fraud as against Defendants. Plaintiffs are also entitled to prejudgment interest on the judgment from the date of breach or multiple breaches to the date of the judgment at the lawful prejudgment rate of interest and would request that the Court enter a judgment for the prejudgment interest as against Defendants. Plaintiffs also assert a claim against each of the Defendants for aiding and abetting the breach of fiduciary duties of the Defendants, and seek disgorgement of any fees, profits, or benefits earned by any of the Defendants as a result of the breach of fiduciary duties.

61.     Defendants' conduct has caused Plaintiffs and Class members harm, loss, and damages, and continues to expose them to harm as Defendants continue to breach their fiduciary duties. These losses reflect damages to Plaintiffs and Class members in an amount to be determined at trial or separate proceedings as necessary.

62.    Plaintiffs are entitled to interest on the judgment from the date of the judgment until paid, at the lawful post judgment rate of interest and requests that the Court enter a judgment awarding said post judgment interest against Defendants.

**Count Four:  Fraudulent Misrepresentation (against Defendants)**

63.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

64.    Defendants made numerous, false representations of material fact to Plaintiffs at various different times during the transactions at issue herein. Defendants knew the representations were false when making them, or alternatively, made the representations recklessly, as positive assertions, and without knowledge of their truth. Defendants made the representations with the intent that Plaintiffs act on it and Plaintiffs justifiably relied on the representations to their detriment, which caused the Plaintiffs injury.

65.    Defendants made misrepresentations and committed fraud by representation and/or omission to the Class members by, among other things, (i) representing to customers that they would be able to freely buy, sell, or short securities, (ii) failing to disclose that their platforms were going to remove purchasing of the Restricted Stocks in a timely manner; (iii) removing Restricted Stocks; (iv) removing Restricted Stocks for their own pecuniary benefits; (v) failing to provide access to financial services in a timely manner; (vi) failing to comply with all applicable legal, regulatory, and licensing requirements; and (vii) failing to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

66.    As a result of Defendants' conduct, Plaintiffs have suffered actual and consequential damages in an amount that is within the jurisdictional limits of this Court,

for which Plaintiffs now bling this suit. In addition, Plaintiffs seek the recovery of exemplary damages, interest, and costs.

## Count Five: Tortious Interference with Existing Contracts and Prospective Relations (Against the Hedge Fund Defendants)

67.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

68.    Plaintiffs had potential business and economical relationships that could have resulted in new business for them, including but not limited various transactions related to the Restricted Stocks.  The Hedge Fund Defendants tortiously interfered with these current and future opportunities as set forth above.

69.    The Hedge Fund Defendants willfully and intentionally interfered with Plaintiffs' existing contracts in an attempt to harm Plaintiffs and its business operations. Defendants' conduct was independently tortious or unlawful. Defendants' inte1ference proximately caused the Plaintiffs' injury, and Plaintiffs suffered actual damage or loss.

70.    As a proximate result of Defendants' tortious interference, Plaintiff have suffered actual, special, and consequential damages, including lost costs, lost profits, and exemplary damages, for which Plaintiffs now bring this suit.

## Count Five:   Civil Conspiracy (against Defendants and Hedge Fund Defendants)

71.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

72.    Defendants and the Hedge Fund Defendants participated in a conspiracy to tortiously interfere with Plaintiffs' existing and prospective contractual relationships, to defraud Plaintiffs, and to breach fiduciary duties owed to Plaintiffs. Defendants and the Hedge Fund Defendants were a member of a combination of two or more persons or

entities. The object of the combination was to accomplish an unlawful purpose. Defendants and the Hedge Fund Defendants had a meeting of the minds on the object or course of action and in furtherance of the object or course of action, one of the members of the combination committed an unlawful, overt act. The actions of Defendants and the Hedge Fund Defendants complained of herein were a proximate cause of harm to Plaintiffs and have resulted in actual damages in an amount within the jurisdictional limits of this Court for which sums Plaintiffs now sue Defendants and the Hedge Fund Defendants. As a result of Defendants and the Hedge Fund Defendants willful and deceitful actions, Plaintiffs seek the recovery of exemplary damages.

## Count Six: Unjust Enrichment (against Defendants and Hedge Fund Defendants)

73.    Plaintiffs incorporate each of the foregoing paragraphs by reference as if fully set forth herein verbatim.

74.    Defendants and the Hedge Fund Defendants have enriched themselves to the detriment of the Plaintiffs, and all others similarly situated. By Defendants' and the Hedge Fund Defendants' conduct, Defendants and the Hedge Fund Defendants have received benefits that would be unjust for them to keep. Accordingly, Plaintiffs seeks the alternative remedy of restitution in order to restore money taken from Plaintiffs and request that Defendants and the Hedge Fund Defendants disgorge the benefits that would be unjust for them to keep.

### PRAYER AND REQUEST FOR RELIEF

WHEREFORE Plaintiffs respectfully request that citation issue and process be served on Defendants and the Hedge Fund Defendants and that the Court provide the following relief:

1.     Immediately enter an injunction requiring Defendants to reinstate the Restricted Stocks on their trading platform;

2.     Enter a judgment for Plaintiffs against Defendants and Hedge Fund Defendants to be determined;

3.     Enter an award for reasonable attorneys' fees and costs;

4.     Enter an award for special, exemplary, and/or punitive damages for the willful, wanton, and reckless behavior of Defendants and the Hedge Fund Defendants;

5.     Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted, this 29th day of January 2021.

*/s/ Lawrence J. Friedman*
Lawrence J. Friedman
lfriedman@fflawoffice.com
Texas Bar No. 07469300
Ryan K. Lurich
rlurich@fflawoffice.com
Texas Bar No. 24013070
Friedman & Feiger, L.L.P.
5301 Spring Valley Road, Suite 200
Dallas, Texas 7554
(972) 788-1400 (phone)
(972) 788-2667 (facsimile)

*/s/ Bruce W. Steckler*
Bruce W. Steckler
Bruce@swclaw.com
Texas Bar No. 00785039
Paul D. Stickney
judgestickney@swclaw.com
Texas Bar No. 00789924
Austin Smith
austin@swclaw.com
Texas Bar No. 24102506
Steckler Wayne Cochran, PLLC
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
(972) 387-4040 (phone)
(972) 387-4041 (facsimile)

*/s/ W. Carter Boisvert*
W. Carter Boisvert
carterboisvert@cblawaustin.com
Texas Bar No. 24045519
Carter Boisvert Law Group, P.C.
12600 Hill Country Boulevard, Suite R-275
Bee Cave, Texas 78738
(512) 538-5788 (phone)
(512) 329-2604 (facsimile)

Michael L. Gaubert
michael@gaubertlawgroup.com
Texas Bar No. 00785903
Gaubert Law Group, P.C.
100 Crescent Court
7th Floor
Dallas, Texas 75201
(214) 593-6440 (phone)
(972) 441-2960 (facsimile)